# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| **ANDREA R. SILVA,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 3:09-cv-01174-RDP |
| } | |
| **MICHAEL ASTRUE, Commissioner of** } | |
| **Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act, and her application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

### I. Proceedings Below

Plaintiff filed her applications for a period of disability, DIB, and SSI benefits on April 12, 2005. (R. 145, 342). Plaintiff alleges a disability onset date of December 31, 2005.[1] (R. 99). Plaintiff's applications were denied initially and also upon reconsideration. (R. 46, 58). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (R. 64-66, 71). The hearing was held on August 21, 2007 in Florence, Alabama. (R. 70, 338-70). In his October

---

[1] On August 21, 2007, Plaintiff amended her onset date of disability from the originally stipulated date of February 15, 2002 to December 31, 2005. (R. 98, 186).

19, 2007 decision, the ALJ determined that Plaintiff had not been under a disability within the meaning of the Act at any time from December 31, 2005, through the date of the decision, and was therefore not eligible for a period of disability, DIB, or SSI benefits. (R. 23-34). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (R. 6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing in question, Plaintiff was forty-nine years old and had completed the twelfth grade, as well as a cosmetology training program. (R. 342, 345). Plaintiff testified that since her alleged disability onset date, she has had no income or medical insurance, and receives no unemployment compensation, food stamps, or subsidies. (R. 344-45). Plaintiff received a worker's compensation settlement of $20,000[2] as the result of injuries sustained in 1999 and a subsequent re-injury in 2002. (R. 344). In the fifteen years preceding her alleged onset date of disability, Plaintiff was employed as a residential program worker and an in-home caregiver. (R. 116, 129).

Plaintiff alleges that she suffers from chronic back problems. (R. 179, 185). Plaintiff complains she is constantly in pain and experiences sharp pain after working for periods of time lifting, bending, or sitting. (R. 155). Plaintiff testified that because of her pain, she started missing time from work and had to schedule her hours around the days when she felt better. (R. 346). Ultimately, Plaintiff's employer decided that it would be better if she didn't work for her anymore and Plaintiff stopped working. (R. 169, 347). Plaintiff alleges that her continued pain prevents her from returning to work and limits her ability to complete daily tasks and sleep through the night. (R. 155). Additionally, Plaintiff allegedly suffers from decreased sleep and panic attacks. (R. 149). She

---

[2] Plaintiff testified that she "believes" the amount of the settlement was $12,000.00, rather than the $20,000.00 put forth in the ALJ decision. (R. 27, 344).

has taken a variety of medications to help with her pain and anxiety issues including Ambien, Baclofen, Vicodin, Ultram, and Ativan. (R. 150, 189).

## II. ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a prima facie case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to [the Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since December 31, 2005. (R. 25). Plaintiff met the disability insured status requirements of the Act and acquired sufficient quarters of coverage to remain fully insured through the date of the decision, October 19, 2007. (R. 25, 34). Based upon the medical evidence presented, the ALJ concluded that Plaintiff has "severe" degenerative disk disease of the lumbar spine, borderline intellectual functioning, depressive disorder, and anxiety. (R. 25). Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25).

After consideration of all the medical evidence, including Plaintiff's subjective complaints, the ALJ made the following findings: Plaintiff retains the RFC to perform the exertional and nonexertional requirements of light work; she can lift twenty pounds occasionally and ten pounds frequently; she can occasionally pull ten pounds; she can stand and walk for about six hours; and she can sit without restriction. (R. 26). While she can never crawl, Plaintiff can occasionally kneel, bend, stoop, and crouch, and has no manipulative limitations. (R. 26). Plaintiff has a verbal IQ of 81, a performance IQ of 75, and a full scale IQ of 76. (R. 26). She can receive simple limited instructions. (R. 26).

After comparing Plaintiff's RFC with the physical and mental demands of her previous relevant work as a companion, the ALJ found that Plaintiff is able to perform such work as she actually performed it and as it is usually performed in the national economy. (R. 33). This finding was supported by the testimony of Patsy Bramblett, a vocational expert ("VE"). (*See* R. 349-51). Thus, the ALJ ruled that Plaintiff has not been under a disability, as that term is defined in the Act, from December 31, 2005 through the date of this decision. (R. 33).

### III.  Medical Evidence

Plaintiff was treated by S. Hochman, D.C., from February until August of 1999 for injuries resulting from a motor vehicle accident. (R. 197). An examination of Plaintiff's lumbar spine revealed moderate muscle spasm and multiple positive tests. (R. 198). For insurance purposes, the diagnosis rating showed a five percent decrease in function of the lumbar spine. (R. 199). With respect to Plaintiff's injuries, the next relevant medical record is a partial report from Dr. Mark Russi, M.D., of Yale Occupational and Environmental Medicine dated January 17, 2002. (R. 200). In this report, Plaintiff alleged that there was never any resolution of her lower back pain and that her symptoms were worsening. (R. 200). An examination of Plaintiff by Dr. Russi led to the assessment that Plaintiff's lower back pain is unlikely to represent a protruding lumbar disk and might be due to inflammation in her lumbar spine joints, which is a treatable condition. (R. 200). An MRI was recommended to pinpoint the cause of Plaintiff's lower back pain. (R. 200). An MRI was performed on January 30, 2002 and revealed desiccation of the L2-3, L3-4, and L4-5 disks, minimal left lateral disc bulges at L2-3 without significant spinal canal stenosis, and minimal narrowing of the left neural foramina. (R. 201). Additionally, minimal disc bulges were noted at L4-5 and L5-S1 without any compromise of the spinal canal or neural foramina. (R.201).

On April 10, 2002, Plaintiff began treatment with Dr. John W. O'Brien who believed that her pain was caused by two injuries: lower body whiplash resulting from a 1999 motor vehicle accident, and a 2002 injury at work. (R. 224). After an examination, Dr. O'Brien limited Plaintiff to lifting no greater than thirty pounds and no repetitive bending at the waist. (R. 225). On April 25, 2002, Dr. O'Brien reported that Plaintiff had begun physical therapy. (R. 223). Plaintiff's functional condition increased until May 2002, at which time she informed Dr. O'Brien that her boss

5

had required her to exceed the stipulated work restrictions.  (R. 218, 221, 222).  On May, 24, 2002, Plaintiff consulted Dr. O'Brien complaining of pain and pressure in her lower back extending into the buttocks.  (R. 202).  Dr. O'Brien found Plaintiff suffered from a loss of disk space in L2-3 and L4-5, a finding compatible with degenerative disc disease.  (R. 202).  Dr. O'Brien found a mild, broad-based disc bulge at L2-3, possibly abutting the L3 nerve root. He also found a broad-based disk bulge at L4-5 abutting the right L4 nerve root.  (R. 202).  After comparing these findings to the exam administered by the staff at Yale-New Haven Hospital, it was concluded that Plaintiff had no interval progression of the degenerative disk disease.  (R. 203).  During a follow-up appointment on June 27, 2002, Dr. O'Brien found Plaintiff's injury to be "the same or slightly worse" when compared to her condition in early May 2002.  (R. 215).  In May 2002, Plaintiff was given physical restrictions which she was unable to follow through.  (R. 215).  Dr. O'Brien concluded that Plaintiff should remain out of work until a suitable employment position could be found.  (R. 215).

On July 26, 2002, Dr. O'Brien reported that Plaintiff had resumed physical therapy and was progressing well.  (R. 217).  Dr. O'Brien continued to prescribe limited duty at work: no lifting greater than ten pounds; no carrying, pushing or pulling; unlimited standing and walking; sitting no more than 20 minutes at a time and for no more than three accumulative hours during an eight-hour workday; no bending, twisting or repetitive lifting; and no wheelchair pushing for at least three weeks.  (R. 217).  During a follow-up visit on September 19, 2002, Dr. O'Brien noted that Plaintiff had expressed an interest in vocational retraining and provided his medical impression under the AMA Guides to Evaluation of Permanent Impairment V$^{th}$ Edition that Plaintiff's lumbar spine impairment falls under category II with a seven percent permanent partial impairment of the lumbar spine.  (R. 211).

Plaintiff's only medical record from 2003 is a report from Dr. O'Brien dated August 23, 2003 in which Dr. O'Brien reported that Plaintiff had been enrolled in a work hardening program at a physical therapy center. (R. 212). Dr. O'Brien recommended the following permanent work restrictions for Plaintiff: floor to knuckle lift twenty-one pounds; twelve inch to knuckle lift twenty-one pounds; knuckle to waist lift eighteen pounds; waist to shoulder lift fifteen pounds; shoulder to over head lift fifteen pounds; unilateral carry thirteen pounds; bilateral carry twenty-two pounds; front carry fifteen pounds; pushing and pulling of the sled fifty-three pounds. (R. 212).

On July 20, 2004, Dr. O'Brien reported that Plaintiff had completed vocational rehabilitation as a cosmetologist but was unable to bend and therefore unable to perform essential functions of her employment. (R. 208). In the same report, Dr. O'Brien expressed doubts as to Plaintiff's ability to perform work in the other fields in which she had expressed an interest, either as a medical assistant or in medical billing and coding. (R. 209).

On October 31, 2004, Dr. Rajeshwari Kumar of the Sunnybrook Medical Group, examined Plaintiff who continued to complain of lower back pain. (R. 240). Dr. Kumar found tenderness in Plaintiff's right lower lumbar paraspinal region and endorsed the following functional limitations: occasionally lifting fifty pounds; frequently lifting twenty-five pounds; sitting and standing indefinitely as long as she may shift positions; occasionally bending or stooping; and unlimited kneeling, climbing and upper-extremity activities. (R. 240-42).

On November 2, 2004, Dr. Krishna Misra, also of the Sunnybrook Medical Group, found a narrowing of disk spaces at L4-5 and L5-S1 and a partial sacrilization of L5. (R. 243). Two weeks later, Dr. Shashi Mathur, a medical consultant, indicated a belief that Plaintiff was suffering from a degenerative disease of the lumbar spine. (R. 246). Dr. Mathur recommended that Plaintiff limit

her activities within the bounds of the following guidelines: occasionally lift and or carry fifty pounds; frequently lift or carry twenty-five pounds; stand or walk for a total of six hours in an eight hour workday; and sit for no more than six of the eight hours in a typical work day. (R. 246-48). Dr. Mathur concluded that Plaintiff's symptoms were in fact attributable to a medically determinable impairment. (R. 251).

On March 8, 2005, Plaintiff visited the Alameda County Medical Center complaining of chronic back pain, chest pain, anxiety, and what Plaintiff believed to be panic attacks. (R. 283). Plaintiff was prescribed Ambien and Ativan. (R. 283). One week later, Dr. Virgil Williams of the same practice interpreted Plaintiff's echogram to confirm degenerative disk disease with desiccation and bulging at the L2-3 through L4-5 levels. (R. 285). Dr. Williams also noted the presence of foraminal stenosis secondary to disk bulging. (R. 285).

On August 30, 2005, Plaintiff received a comprehensive orthopedic evaluation from Dr. Matthew Mitchell, of MDSI Physician Services. (R. 254). Dr. Mitchell's evaluation confirmed Plaintiff's low back pain leading him to limit Plaintiff to standing or walking no more than six hours. (R. 257). Dr. Mitchell placed no restriction upon Plaintiff's ability to sit and indicated that she could lift twenty pounds occasionally, lift ten pounds frequently, occasionally kneel, bend, stoop, and crouch, but never crawl. (R. 257).

On September 20, 2005, Dr. LolaLee VanCompernolle offered a similar prognosis allowing Plaintiff to occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand, walk, or sit for six hours a day; push and pull without limitation; never climb; occasionally ascend a ramp or stairs; occasionally stoop and crouch; and frequently kneel, balance, and crawl. (R. 258-63). Dr. VanCompernolle concluded that Plaintiff's symptoms were attributable to a medically

determinable impairment, but that the severity and duration of the symptoms were disproportionate to the expected severity or duration of such impairment. (R. 263).

On April 17, 2006, Dr. Rosemarie Ratto, a licensed psychologist, examined Plaintiff's mental state. (R. 289). Using the Wechsler Adult Intelligence Scale III, Dr. Ratto concluded that Plaintiff had a verbal IQ of 81 (low average), a performance IQ of 75 (borderline), and a full scale IQ of 76 (borderline). (R. 289). Plaintiff was diagnosed with a depressive disorder, allegedly the result of her chronic pain. (R. 289). Additionally, Dr. Ratto acknowledged that an anxiety disorder or post-traumatic stress disorder may also exist. (R. 289). Dr. Ratto concluded that Plaintiff might have difficulty with the stress of employment and possibly could be impaired in her ability to understand and follow instructions. (R. 289). One week later, Dr. Ida M. Hilliard stated her conclusions of a psychiatric review of Plaintiff. (R. 286). Dr. Hilliard found that Plaintiff's "affective disorder" and "anxiety-related disorder" were "not severe." (R. 286).

A March 22, 2006 progress record from Dr. Boakye of the Alameda County Medical Center documented Plaintiff's complaints of chronic low back pain with tingling and numbness, as well as severe anxiety. The record reflects Plaintiff's prescriptions for Oxycodone, Ativan, Ambien, Soma, and Ibuprofen. A November 9, 2006 progress record of Dr. Boakye reported "dissification" [*sic*] of Plaintiff's spine, a pinched nerve affecting her swollen leg, her left arm, and her occasionally numb, burning fingers on her left hand. (R. 294). Plaintiff sought refills of her medications which included Oxycodone and Ambien. The burning in Plaintiff's left leg and her lower back pain were also documented following a June 16, 2006 examination by Dr. Moure of the Alameda County Medical Center who additionally noted Plaintiff's use of oxycodone and Ambien.

### IV. Plaintiff's Argument for Remand or Reversal

Plaintiff did not submit a brief in this appeal. This court will inquire into whether the ALJ's decision is supported by substantial evidence and whether proper legal standards were applied.

### V. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield

automatic affirmance." *Lamb, 847 F.2d at 701*. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## VI. Discussion

**A.    Substantial Evidence Supports the ALJ's Decision, and the ALJ Applied the Correct Legal Standards.**

The Eleventh Circuit has held that a claimant bears the burden of proving her claim for disability. *Doughty v. Apfel*, 245 F.3d 1274, 1278, 1280 (11th Cir. 2001). Therefore, Plaintiff must show that she has been unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or last, or be expected to last, for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a); *see also Powell o/b/o Powell v. Heckler*, 773 F.2d 1572, 1576 (11th Cir. 1985); *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985).

The responsibility for determining a claimant's RFC rests with the ALJ, *see* 20 C.F.R. § 404.1546, and that assessment should be based upon all of the relevant evidence, including descriptions of limitations, observations of limitations by treating physicians, family, or other persons, as well as other medical records. *See* 20 C.F.R. § 404.1545. In determining a claimant's RFC, the ALJ must consider the medical opinions in the record and the claimant's subjective complaints of pain. (R. 26). The opinion of a treating physician as to a claimant's condition and the medical consequences thereof is entitled to deference, absent good cause. *See* 20 C.F.R. §§ 404.1527, 416.927 (1998); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists where the treating physician's opinion is not bolstered by the evidence or where the evidence

supports a contrary finding. *Id.* The Eleventh Circuit explained this requirement in *Cowart v. Schweiker*:

> What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision. In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.

662 F.2d 731, 735 (11th Cir. 1981).

The opinion of a treating physician is to be given substantial weight in determining disability. *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986). The ALJ noted that Plaintiff's August 30, 2005 appointment with Dr. Mitchell was her last medical examination prior to amending her alleged onset date of disability to December 31, 2005. (R. 31). The ALJ found that at the time Plaintiff alleged disability, the opinion of Dr. Mitchell was most consistent with the medical evidence, as well as Plaintiff's reports of daily activities, her medication, and her response to such medication. (R. 31). Therefore, the ALJ adopted Dr. Mitchell's opinion in assessing Plaintiff's RFC. (R. 31).

In Plaintiff's letter to the Appeals Council, Plaintiff acknowledges that Dr. Mitchell performed a "through [sic] examination of the claimant." (R. 14). However, Plaintiff alleged that Dr. Mitchell's examination was hindered because he had neither x-rays nor MRI scans on which to ultimately base his medical conclusions. (R. 14). However, the relevant medical record clearly shows that Dr. Mitchell reviewed Plaintiff's MRI scan from Whitney Imaging Center and acknowledged its showing of degenerative disk disease at L2-3 and L4-5, as well as a mild disk bulge in several of Plaintiff's intravertebral disks. (R. 254). Dr. Mitchell also reviewed another of Plaintiff's MRI scans dated May 24, 2002, that showed no interval change from the previous image.

(R. 254). Because Dr. Mitchell's opinion does in fact reflect a complete examination of Plaintiff including a review of her relevant MRI scans, the ALJ's decision to adopt Dr. Mitchell's opinion in assessing Plaintiff's RFC was proper.

In Plaintiff's letter to the Appeals Council, Plaintiff also claims that the ALJ failed to properly consider the objective medical evidence that supports her subjective complaints of pain. (R. 14). In the Eleventh Circuit, the proper two-part standard used to assess subjective complaints of pain first requires evidence of an underlying medical condition. *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985). In the instant case, the ALJ acknowledged that Plaintiff had satisfied this part of the standard (R. 26) citing the finding that Plaintiff has "severe" degenerative disk disease of the lumbar spine, borderline intellectual functioning, depressive disorder, and anxiety. (R. 25). However, the second part of the pain standard requires objective medical evidence confirming either (1) the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Landry*, 782 F.2d at 1553 (citing *Hand*, 761 F.2d at 1548). The ALJ held that neither condition was satisfied in this case. (R. 26). In Plaintiff's letter to the Appeals Council, she alleges that the ALJ improperly limited his consideration only to her daily activities in order to discredit her complaints of pain. (R. 15). However, the ALJ specifically cited Plaintiff's limited medical treatment, the limited findings when treatment was sought, and her statements as to her daily activities including driving, occasionally shopping, and occasionally doing laundry. (R. 31-32). Furthermore, the ALJ relied upon Plaintiff's own testimony in which she alleged that she could lift twenty to twenty-five pounds with both hands, ten to fifteen pounds with either hand alone, stand for twenty minutes at a time, sit for twenty

minutes at a time, and walk ten minutes at a time, as support for the finding that she has failed to satisfy the second part of the Eleventh Circuit pain standard. (R. 32). After considering Plaintiff's diagnoses, her physician's observations, and her description of daily and functional activities, the ALJ came to the conclusion, based upon the evidence, that Plaintiff has no limitations inconsistent with light work-related activities, as found by Dr. Mitchell. (R. 32). In support of this conclusion, the ALJ noted that none of the physician-confirmed analyses made by state agency examiners indicate "a level of limitation in excess of that which would indicate the ability to perform light work." (R. 31). Considered together, these facts support the ALJ's decision and satisfy the Eleventh Circuit's "substantial evidence" standard.

Finally, Plaintiff alleges that the ALJ improperly determined that her mental impairments of depression, attention-deficit hyperactivity disorder, and obsessive-compulsive disorder were only mild impairments. This finding was also based upon substantial evidence. The ALJ correctly noted that Plaintiff "neither sought nor received treatment by any psychiatrist, psychologist or mental health center, and none of the physicians she has seen has indicated that such treatment is necessary." (R. 32). A consultative psychological evaluation performed by Dr. Rosemarie Ratto indicated that although Plaintiff "could have difficulty with the stress of employment" she was able to understand simple and limited complex instructions and had an adequate memory for simple and limited complex tasks. (R. 288-89). Furthermore, Dr. Ratto found Plaintiff was able to get along adequately with others and could adequately avoid simple hazards. (R. 289). This being the case, Dr. Ratto concluded that she had found "no evidence of a 'severe' mental impairment." (R. 289). The ALJ gave little weight to the opinion of the state agency consultants and instead adopted the opinion of Dr. Ratto in assessing Plaintiff's mental limitations because she had actually examined Plaintiff. (R.

32). Eleventh Circuit jurisprudence supports such a decision as the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler,* 776 F.2d 960, 961 (11th Cir. 1985).

### VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with the memorandum of decision will be entered.

**DONE** and **ORDERED** this      25th      day of August, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE